*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GALL, also known as C. L. J, Jr., Minor.

UNPUBLISHED
August 07, 2026
1:17 PM

No. 378609
Wayne Circuit Court
Family Division
LC No. 2024-002060-NA

Before: LETICA, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor child under MCL 712A.19b(3)(g) (failure to provide proper care and custody), MCL 712A.19b(3)(i) (failure to rectify conditions leading to prior termination), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if child returned to parent).[1] We affirm.

## I. BACKGROUND

On October 31, 2024, the child was born and tested positive for cocaine, benzodiazepines, hydroxybenzoylecgonine, morphine, codeine, methamphetamine and methadone. The child was treated for withdrawal symptoms as he suffered from "fever, difficulty breathing or quick breathing, tremors, and feeding issues." The child had to stay in the hospital for over six weeks. Petitioner, the Department of Health and Human Services (DHHS), began investigating respondent when the child was born. During the DHHS's investigation, respondent admitted to (1) actively using cocaine and heroin, (2) struggling with a drug addiction for more than 10 years, (3) previously being treated for substance abuse but not completing any substance abuse services, and (4) failing to receive prenatal care for the child. Respondent also told the DHHS that she did not have a plan for housing or a job.

---

[1] No legal father for the child has been established.

The DHHS filed a petition to remove the child and terminate respondent's parental rights on December 9, 2024.[2]  The petition alleged that it was contrary to the welfare of the child to remain in the care or supervision of respondent due to physical neglect, substance abuse, placing a child at unreasonable risk, and a prior termination of her parental rights.  The petition alleged that respondent had her parental rights terminated to another child, FG, in December 2018 due to her substance abuse, untreated mental health issues, and her failure to complete court-ordered services.

The trial court held a preliminary hearing on December 17, 2024, but respondent did not appear despite the DHHS's efforts to notify her of the hearing.  Following testimony from the Children's Protective Services (CPS) case investigator, Alexandra Smith, the trial court found that it was contrary to the child's welfare to be in respondent's care because the child tested positive for multiple narcotics at birth; respondent admitted to using drugs; respondent's rights to FG were previously terminated because of substance abuse and mental health issues; and respondent's location was unknown.  The court found that the child would be at risk of harm in respondent's care.  The trial court also found that the DHHS made reasonable efforts to prevent removal.  The court ordered that if respondent appeared, visits would be supervised by the DHHS "with discretion for designee."  The child was discharged from the hospital on December 18, 2024, and placed with his maternal grandparents, who also had custody of FG.

Respondent continued to fail to appear for numerous hearings throughout the case and her location was generally unknown, despite the DHHS's efforts to locate her.  A bench trial began on April 9, 2025, and continued on multiple different dates.  Respondent was present for the continued bench trial on July 31, 2025.  Respondent testified that she did not visit the child at all while he was in his grandmother's custody because she was using drugs.  She testified that she tried to send the grandmother money, clothes, and other items for the child, but the grandmother had not responded.  She admitted to having a drug problem with heroin and crack cocaine and testified that she used heroin on the date of trial, sometime after midnight.  She stated that she attended a rehabilitation program at Harbor Light Salvation Army in Clinton Township, Michigan, for two weeks, but did not finish the program.  Respondent further admitted that she could not care for the child at the time of trial, but stated that she could if she had help making a plan and establishing structure.  When asked whether she had a plan to convince the court that she was going to be sober again, when she had not been sober since 2018, respondent testified:

> I have, like, a plan for the next couple weeks made out.  I was gonna try and keep in contact with the Court, and, like, go—like, admit my weekly progress and stay in treatment during that time, and then, take whatever suggestions, whatever court—whatever is asked of me to do, follow through with that as well.

Smith testified that the DHHS had not had contact with respondent since December 4, 2024, despite efforts to locate her.  She testified that respondent had not provided any support to the child during the investigation and that the child was doing well living with the grandmother,

---

[2] The DHHS signed the petition on December 9, 2024, and it is unclear from the record why the petition was not stamped as filed by the Wayne County Clerk's Office until January 23, 2025.

who was willing to adopt him. Smith stated that she believed neither reunification, guardianship, placement with a relative, nor placement in a residential facility were appropriate goals for the child because respondent's recurring issues had not been corrected, and adoption provided permanency. Smith said that even though the child was placed with a relative, adoption was appropriate because respondent had no relationship with the child and had not cared for the child, while the grandmother had cared for the child like a mother. Smith also testified that there was a bond between the child and the grandmother and between the child and FG. The grandmother was open to respondent visiting the child, but respondent had not done so. According to Smith, the last time respondent had contact with the child was in the hospital in November 2024.

The foster-care specialist employed by the DHHS, Teqwazha Terry, also testified at the bench trial. She stated that she had not had any contact with respondent but was in regular contact with the grandmother. Terry said respondent had not visited or provided any financial support while the child was with the grandmother. Terry testified that the child was happy and bonded to the grandmother and that the home was a suitable long-term placement for the child. Terry believed that adoption was the best permanency goal for the child.

The trial court found that it had jurisdiction under MCL 712A.2(b) because respondent had not provided for the child or "been part of the child's life" and struggled with drug addiction. The trial court also found statutory grounds to terminate under MCL 712A.19b(3)(g), (i), and (j), as indicated earlier. The trial court found that although the child was with a relative, it was in the child's best interests to terminate respondent's parental rights. The court explained that the grandmother wanted to adopt the child, the child was too young for guardianship, and respondent's continuing issues could disrupt the grandmother's and the child's lives without termination. If respondent's rights were not terminated and something happened to the grandmother, "the child could be returned to [respondent], which would put the child at risk." Ultimately, the trial court terminated respondent's parental rights to the child, finding that termination was necessary for the child to have permanency, stability and finality. This appeal followed.

## II. BEST INTERESTS OF THE CHILD

Respondent argues that termination was not in the child's best interests because she wants a plan to work toward reunification, she plans to enroll in inpatient treatment for her drug addiction, and the child is placed with a relative. We disagree.

Respondent does not contest that the trial court properly found a statutory ground to terminate respondent's parental rights. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "This Court reviews for clear error the trial court's ruling that . . . termination is in the [child's] best interests. A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011) (citations omitted). And "whether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence," *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013), "consider[ing] the whole record," *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016) (quotation marks and citation omitted).

"In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* (citations omitted). The trial court may also consider "the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re Mota*, 334 Mich App 300, 321; 964 NW2d 881 (2020) (quotation marks and citation omitted). "The focus at the best-interest stage has always been on the child, not the parent." *In re Keillor*, 325 Mich App 80, 93; 923 NW2d 617 (2018). (quotation marks and citation omitted). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

Additionally, "because a child's placement with relatives weighs against termination . . . , the fact that a child is living with relatives when the case proceeds to termination" must be considered as a factor in the best-interest analysis. *In re Olive/Metts*, 297 Mich App at 43 (quotation marks and citation omitted). But "the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests . . . ." *Id*. See also *In re Gonzales/Martinez*, 310 Mich App 426, 435; 871 NW2d 868 (2015) (holding that despite relative placement, termination was appropriate when the respondent-mother had not successfully addressed her issues, the children's relatives were willing to adopt, and the "children were excelling in their new environment"). And "[a] trial court is not required to establish a guardianship in lieu of termination if it is not in the child's best interests to do so." *In re Lombard*, 351 Mich App 523, 534; 35 NW3d 751 (2024).

In this case, the trial court's determination that termination of respondent's parental rights was in the child's best interests was not clearly erroneous. The trial court found that there was no bond between respondent and the child. Concerning respondent's parenting ability and the child's need for permanency, stability, and finality, the trial court found that respondent had not provided for the child or "been part of the child's life" and had not adequately addressed her challenges with drug addiction. Respondent testified that she had tried to send money and supplies to the child's grandmother and had asked the grandmother how the child was doing. However, the trial court did not clearly err in its preponderance-based finding, considering that the foster-care specialist testified that respondent had provided no support and had not communicated with the child or the grandmother. See *In re Medina*, 317 Mich App at 227 ("We must defer to the special ability of the trial court to judge the credibility of witnesses.") (quotation marks and citation omitted). As the trial court reasoned, without termination, respondent's unaddressed issues could disrupt the child's life, and if something happened to the grandmother, "the child could be returned to [respondent], which would put the child at risk."

Regarding the advantages of the grandmother's home over respondent's, respondent did not have a stable home throughout the proceedings. Although respondent testified at trial that she had moved to a home, she could not be located at that home thereafter. There was no indication at any of the proceedings that respondent had a stable home to provide the child.

Moreover, although respondent expressed a desire to address her substance abuse issues, there were no signs that she was making progress toward that goal. At the time of her testimony, she was still frequently using heroin and crack cocaine and had used heroin that day. It was not

clearly erroneous for the trial court to conclude that respondent's long history of drug abuse without signs of improvement meant that termination was in the child's best interests.

Additionally, respondent had not visited the child at all while the child was in the grandparents' custody, despite the court allowing supervised visitation and the grandmother's willingness to accommodate respondent. The child was thriving in the grandparents' custody and had bonded with both his grandmother and his half sibling, FG. Moreover, the grandmother was open to adopting the child and had already adopted FG, and both Smith and Terry testified that there were no barriers to adoption.

Finally, the trial court specifically addressed the issue of relative placement but found that, nonetheless, termination was in the child's best interests. Respondent had not successfully addressed her drug addiction, the child's grandmother was willing to adopt, and the child was thriving in his placement. The trial court in this case properly found that without termination, the child would not achieve the necessary stability or permanence.

In sum, the trial court's finding that termination of respondent's parental rights was in the child's best interests was not clearly erroneous. Respondent had long-term struggles with drug addiction and showed no signs that she would overcome those in the near future. Respondent had not been involved at all in the child's life, and the child was doing well under the care of his grandmother. Even though the child was placed with a relative, that was not a bar to termination, and the trial court specifically found that, in spite of the relative placement, termination was appropriate to provide the child with stability and permanence.

Affirmed.


/s/ Anica Letica
/s/ Colleen A. O'Brien
/s/ James Robert Redford